Mary Merrick, Appellant, v. John Merrick, Also Known as John Brown. John A. Nordstrand, Appellee.

Gen. No. 42,080.

624

CHARLES D. CALLAHAN, of Chicago, for appellant.

JAMES L. BURDEN, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On June 14, 1940, at Chicago, Illinois, Mary Gaines, also known as Mary Gain, who was 53 years of age, married John Merrick, also known as John Brown, who was 80 years of age. On November 7, 1940, Mary Merrick filed her verified complaint for separate maintenance in the superior court of Cook county, alleging that on July 15, 1940, defendant, without any reasonable cause, deserted her and that she was living separate and apart from him without any fault on her part. She also alleged that defendant owned certain real estate and possessed a bank account. On December 5, 1940, defendant filed a verified answer in which he admitted the residence of the parties and the allegation of their lawful marriage on June 14, 1940. He denied that he wilfully and without reasonable cause, deserted her. He admitted ownership of the real estate. On May 8, 1941, John A. Nordstrand filed a petition alleging that on March 24, 1941, he filed an application in the probate court for appointment as conservator of the estate and person of John Merrick,

and that on April 9, 1941, an order was entered appointing him (John A. Nordstrand) conservator of the estate and person of John Merrick, an incompetent person. John A. Nordstrand also filed a counterclaim, alleging that on June 14, 1940, John Merrick, an incompetent, married plaintiff; that they lived together approximately two weeks; that he was suffering from cancer of the tongue, for which he was being treated at a hospital; that plaintiff connived and conspired by artful inducements of attention, aid and comfort to induce him to marry her; that he was 80 years of age and in his dotage; that he was suffering from arteriosclerosis; that on June 14, 1940 (the wedding day) he did not possess sufficient insight, comprehension and judgment to appreciate the obligations of marriage; that on March 7, 1941, he was examined by a psychiatrist, who reported that the defendant might or could have been suffering from an acute exhaustive and toxic psychosis at the time of his marriage, which would have rendered him confused and mentally incompetent. He (John Nordstrand) prayed that the court enter a decree annulling the marriage between the parties. Plaintiff filed an answer to the counterclaim, reaffirming the allegations previously made by her and denying that defendant was incompetent to contract the marriage. On the day the case came on for hearing, plaintiff presented a petition suggesting the death of the defendant on May 29, 1941. The petition also alleged that on July 10, 1940, defendant executed a will in which he gave all of his property to plaintiff; that the will was filed in the probate court, and was set for hearing on July 29, 1941. John Nordstrand filed a petition alleging that on June 24, 1941, he was appointed special administrator for the estate of John Merrick, deceased, and prayed for leave to continue with the defense and prosecution of the case. The chancellor granted leave to John Nordstrand, as special admin-

istrator, to become a party to the instant case and to prosecute the counterclaim for annulment. Plaintiff refused to produce evidence on the issue of annulment, and the court, after hearing the evidence presented on behalf of John Nordstrand, entered a decree abating the cause as to the original complaint and entered a decree of annulment on the counterclaim. This appeal followed.

The theory of plaintiff is (1) that in suits for divorce, separate maintenance and annulment of marriage, where the marriage is the subject matter of the suit, the death of one of the parties before entry of the final decree abates the suit and deprives the court of jurisdiction over the subject matter; (2) that the right of action belonging to John Merrick in his lifetime, to bring an action for annulment of the marriage, was personal to him and did not survive his death; (3) that the superior court had no jurisdiction to determine the sole issue tried, namely, whether plaintiff was or was not the widow of the decedent; (4) that the probate court had no jurisdiction to appoint John A. Nordstrand as special administrator to prosecute the suit for annulment of the marriage; (5) that the superior court had no right or authority to authorize John A. Nordstrand to prosecute the counterclaim for annulment of the marriage; (6) that no property rights were involved, and could not be involved unless the heirs were made parties; (7) that the decree is contrary to the law and the evidence; and (8) that the court erred in admitting evidence on behalf of John A. Nordstrand. The theory of John A. Nordstrand is that he was properly appointed as special administrator by the probate court to prosecute the counterclaim for annulment of the marriage; that the superior court could hear evidence and enter a decree for annulment of the marriage after the death of the parties, where no property rights were involved, and that the evidence shows that John Merrick was incompetent to contract the marriage.

The proof of heirship established in the probate court shows that the deceased left him surviving his widow (plaintiff herein) and four children by a previous marriage. In the hearing before the chancellor the attorney for plaintiff argued that in the absence of a proceeding to settle property rights, or for relief other than the annulment of the marriage, the cause of action presented by the counterclaim abated. The following is an excerpt from a colloquy between the attorney for plaintiff and the court:

"Mr. Buresh: I understand this Court is hearing only the question of the marriage, that is, no property rights are being considered by this Court at all.

"The Court: None at all.

"Mr. Buresh: I am not putting on any defense. Your Honor has said he was not hearing anything with regard to the property rights, just the marriage relation.

"The Court: I am not going to decide any property rights here." During the oral argument of the case in this court, the attorneys stated that subsequent to the filing of the notice of appeal, the will of John Merrick, deceased, which left all of his property to his widow (plaintiff herein), was received and admitted in the probate court as the last will of decedent.

Plaintiff urges that the right of action belonging to John Merrick in his lifetime to bring suit for the annulment of his marriage to her, did not survive his death. In *Bushnell v. Cooper,* 289 Ill. 260, our Supreme Court pointed out that marriage is a personal relation or status created under the sanction of law, and an action for divorce is of a personal nature; that in the absence of a statute to the contrary the death of one of the parties to such an action abates the action, and that an action for separate maintenance, being founded on the marriage relation, also abates on the death of one of the parties. The parties have not cited any case decided by a court of review of this State as to whether the rule announced in the *Bushnell* case

extends to a proceeding for the annulment of a marriage. However, a case involving the question presented for our determination was decided by the Supreme Court of Rhode Island. (*Lynch v. Lynch,* 34. R. I. 261, 83 Atl. 83.) It appears that Mrs. Lynch filed a petition for divorce. Thereafter, on ascertaining that she had a former husband living from whom she had not been divorced, she amended her petition, alleging that the marriage was void, and praying for an annulment. Her petition was dismissed on the ground that she was *in pari delicto* with her husband. The Supreme Court found that the chancellor erred and under the practice of that State entered a rule on Mr. Lynch to show cause why the case should not be remanded to the chancellor with directions to forthwith enter a "decision" in favor of Mrs. Lynch, granting her petition and annulling the marriage. Between the date of the opinion and the date on which the rule to show cause was returnable, Mrs. Lynch died. Upon the suggestion of her death, the Supreme Court said (83 Atl. 403):

"At the hearing given for the respondent to show cause why said case should not be remitted to the superior court, with direction to forthwith enter a decision in favor of the petitioner, granting her petition and annulling the marriage between her and the respondent, the death of the petitioner was suggested by the respondent. The death of the petitioner renders an order for the entry of a decision in accordance with the opinion impossible. The papers in the cause are transmitted to the superior court." We are of the opinion that the rule announced in the *Bushnell* case, that in the absence of a statute to the contrary, the death of one of the parties to a divorce case or a separate maintenance case abates the action, should be applied in a case like the one at bar, where it is sought to annul a marriage.

We call attention to the fact that the sole relief sought by the counterclaim is the annulment of the marriage. The sole issue presented for the determination of the chancellor was whether the plaintiff was the widow of John Merrick. As will be noted, in the colloquy between the chancellor and counsel, the former announced that he was not determining anything as to the property rights. The children of the deceased, who would be necessary parties in settling property rights, were not made parties to the annulment case. We have no doubt that in a proper case a court of chancery would have the right, at the instance of the heirs, or other interested persons, to determine the validity of the marriage even though one of the contracting parties were dead. Here, however, the chancellor expressly stated that he was not attempting to decide any property rights. The decree in this case, in effect, leaves the parties where they were before it was entered. The superior court in the exercise of its equitable jurisdiction would have the right to enter a finding of heirship, providing such finding were incidental to other relief sought. In the instant case the only relief sought was the annulment of the marriage.

Other points have been raised and considered. However, as the points discussed dispose of the case, we will not expand the opinion.

For the reasons stated, the decree of the superior court of Cook county is reversed without prejudice to the right of any interested party in a proper proceeding and in due time to attack the validity of the marriage, and the cause is remanded with directions to enter an order abating both the complaint for separate maintenance and the counterclaim for the annulment of the marriage.

*Reversed and remanded with directions.*

HEBEL and KILEY, JJ., concur.