Eben ADKINS et al *v.* E. G. ADKINS
and Elmer B. ADKINS

75-124                                529 S.W. 2d 144

Opinion delivered November 10, 1975

*Chambers & Chambers,* for appellants.

*Anderson & Crumpler,* for appellees.

J. FRED JONES, Justice. This is an appeal by a number of heirs and cotenants in estate lands from that portion of a chancery court decree of partition which awarded contribution against their distributive shares for back taxes and indebtedness paid by Elmer B. Adkins, one of the heirs and cotenants while in possession of the estate lands.

The second page is missing from the appellants' brief but the facts appear as follows: Gus Adkins was the owner of the lands here involved when he died intestate in 1914. He was survived by his widow Mary Adkins and several children, including the plaintiff-appellants Gene Terrell and Eben Adkins and the defendant E. G. Adkins. E. G. Adkins died in the course of this litigation with his interest in the property passing to his widow, the appellee Elmer B. Adkins, by prior deed creating a tenancy by the entirety.

After Gus Adkins' death in 1914, his widow Mary Adkins married a Mr. Russell. In 1938 Mary Adkins Russell executed a deed of trust on the estate property in favor of A. L. Rogers as trustee for M. E. Peace Building Supply, as security for building materials furnished and sold to Mr. and Mrs. Russell by Peace. In March, 1939, E. G. Adkins paid the balance owing on this account and apparently took an

assignment of the notes and the deed of trust. Different ones of Mrs. Russell's children lived with her on the property here involved and in 1949 or 1950 E. G. Adkins and his wife, the appellee Mrs. Elmer B. Adkins, moved onto the property with Mrs. Russell. They continued to live in the home where Mrs. Russell occupied two rooms until her death in 1956, and they have continued to live on the property since Mrs. Russell's death. E. G. Adkins paid the taxes on the property from 1949 through 1973 except in 1972 when the taxes were paid in the name of the estate by one of the appellants, Eben Adkins.

The original petition filed by the appellants was styled "Complaint in Equity" with E. G. Adkins and the appellee Elmer B. Adkins designated as defendants. The complaint set out the alleged individual interest of each of the parties and the description of the land. The complaint recited that the parties owned the land as tenants in common and had been unable to reach an agreement as to its division. The complaint then prayed for a partition in kind or if not susceptible to partition in kind, that the land be sold and the proceeds divided.

Answer was filed by E. G. Adkins and Elmer B. Adkins in which they alleged that the described land had forfeited for the nonpayment of taxes for the years 1927, 1932, and 1933, and that E. G. Adkins redeemed the property from said sale. The answer then alleged the payment of $602.49 to M. E. Peace Builders Supply at the request of the life tenant and the appellant-plaintiffs. The answer then alleged that in approximately 1946 the property became unoccupied and at the request of the cotenants, E. G. Adkins and Elmer B. Adkins moved onto the property and had paid the taxes thereon from 1946 to date. E. G. Adkins and Mrs. Adkins then prayed that the amounts they had paid be assessed as costs and declared a lien upon the property and that they recover said sums together with interest at the rate of ten per cent per annum from the dates the amounts were paid.

The appellants filed a "Reply to Answer of Defendants" in which they denied that the defendants had redeemed the property from the tax sale under forfeiture and alleged that if

there was such redemption, their claim for same was barred by "laches and/or limitations." The appellants denied the allegations in the answer pertaining to the Builders Supply account but alleged that if such payment was made as alleged in the answer, claim therefor was barred by laches and/or limitations. The appellants denied the allegations and answer pertaining to the payment of taxes but alleged "that any payment of taxes made by the defendants would be set-off for all benefits received for the use and enjoyment of said lands by the defendants." The appellants then alleged that the defendants had cut timber and pulpwood from the lands involved and that they should be required to account to the appellants for their proportionate interest in the timber so cut and sold.

When the issues were finally joined in the trial court, the cotenants in possession, Mr. and Mrs. E. G. Adkins, were requesting contribution for the expenses they set out, including the taxes they had paid, and the appellant-plaintiffs were contending the statute of limitations had run against the claim for the material bill alleged by the defendants; that the claim for back taxes was also barred by limitations but, in any event, should be off-set against the rental value of the property. The chancellor entered a decree for partition setting out the respective interest of all the parties involved and ordered reimbursement to the appellee Elmer B. Adkins in the amount of $3,097.50 to be contributed by the appellants according to their respective interests as heirs and cotenants.

On appeal to this court the appellants rely on the following points for reversal:

"The trial court erred in holding that the three year statute of limitations did not apply to the contribution claims of appellees.

The trial court erred in holding that the appellees in possession should recover for taxes.

The trial court erred in holding that the three year statute of limitations did not apply to tax payments claimed against the tenants in common with the tenant who paid taxes."

The appellee Mrs. Elmer B. Adkins testified that the mortgage indebtedness incurred by Mrs. Russell amounted to $242.49 for lumber and materials used in buildings on the estate land, and $300 for additional materials purchased and used on other land. She said the indebtedness was past due with accrued interest amounting to $60; that Mrs. Russell was being threatened with foreclosure and sale of the property under the deed of trust, and that all the appellant heirs and cotenants, except one, requested her husband to pay the indebtedness and that they agreed to repay him. She said her husband paid the amounts as above set out and she itemized the taxes her husband had paid.

We are of the opinion the chancellor erred in misapplying the law to the facts in this case. The record is not clear as to how the chancellor arrived at the exact amount of the claim allowed but apparently interest accounted for a considerable portion of it. We find it unnecessary to attempt a determination of the correctness of the amounts involved for we are of the opinion the claim for reimbursement of the amount paid on the mortgage indebtedness was barred by the statute of limitations, and that the chancellor's award for back taxes was against the preponderance of the evidence.

Apparently the chancellor considered the deed of trust executed by Mrs. Russell and subsequently sold to E. G. Adkins as creating a valid incumberance and lien on all the undivided interests in the land. According to the clear and uncontradicted evidence, however, Mrs. Russell only owned a life estate in the property when she executed the deed of trust in 1938, which was purchased by E. G. Adkins the following year. Mrs. Russell's life estate was extinguished by her death in 1956 and even at the time of her death, the statute of limitations had long since run on her personal indebtedness evidenced by the notes secured by the deed of trust; and, certainly, the statute had barred any claim E. G. Adkins might have had against the appellants on any oral promises of reimbursement they might have made to him in 1939. Under no stretch of the imagination could this claim of E. G. Adkins have constituted a valid claim against the estate of Gus Adkins or against the undivided interests of his heirs and co-tenants in his estate lands. The appellee Mrs. Elmer

B. Adkins simply had no right of contribution from her cotenants on this thirty-six year old item.

We do not reach the question of the statute of limitations on the claim for back taxes because we agree with the appellants that the claim for taxes under the evidence in this case should be set-off against the rental value of the property. It is clear from the preponderance of the evidence that the appellees left their own property some two or three miles from the property here involved and moved onto the estate property in 1949 prior to the death of the life tenant Mrs. Russell. It is clear that they continued to live on and occupy the property, as they had a right to do as cotenants, from the date of Mrs. Russell's death in 1956 until the present time without payment of rent. The appellees contend that such occupancy was effected at the request of the appellants, but the appellants denied that they made such request. There is no evidence at all as to the rental value of the property and no evidence as to improvements or value of improvements made thereon. The total taxes paid, as alleged and testified by the appellee Mrs. Elmer B. Adkins, amounted to less than $600 for the 20 years she and her husband occupied the property after 1949.

In *Ward* v. *Pipkin,* 181 Ark. 736, 27 S.W. 2d 523, we said:

"It is not shown what the rental value is, but in *Patterson* v. *Miller,* 154 Ark. 124, 241 S.W. 875, it was held that a tenant in common in possession, who has received rents enough to keep the taxes paid, is required to pay the taxes for the benefit of himself and co-tenants. In the absence of a showing to the contrary, it will be presumed that the rental value was sufficient to pay the taxes."

We recognize that the *Ward* and *Patterson* cases, *supra,* are not squarely on all fours with the case at bar as to their facts but we conclude that where a cotenant in common of undivided estate property goes into possession and occupies the property and pays the taxes thereon while in possession, it is only equitable that the taxes so paid should be set-off against the rental value of the property and, in the absence of any proof of rental value, it will be presumed that the rental value

amounts to at least as much as the taxes paid.

The decree is reversed and the cause remanded for such further proceedings, not inconsistent herewith, as may be necessary in the partition of the property here involved.

Reversed and remanded.